UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

J & J SPORTS PRODUCTIONS, INC.,     :
as Broadcast Licensee of the May
28, 2005 Chavez/Robinson            :
Program,
                                    :   06 Civ. 4297 (GBD)(HBP)
            Plaintiff,
                                    :   REPORT AND
    -against-                           RECOMMENDATION
                                    :
PABLO A. GARCIA, Individually
and as an officer, director,        :
shareholder and/or principal of
EL TEJANITO RESTAURANT INC., d/b/a :
EL TEJANITO PIZZERIA &
RESTAURANT and                      :
EL TEJANITO RESTAURANT INC., d/b/a :
EL TEJANITO PIZZERIA &              :
RESTAURANT,
                                    :
            Defendants.
                                    :
----------------------------------X


        PITMAN, United States Magistrate Judge:


        TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge,


I.  Introduction


        On October 8, 2009, the Honorable George B. Daniels,

United States District Judge for the Southern District of New

York, referred this matter to me to conduct an inquest concerning

plaintiff's damages with respect to defendant El Tejanito

Restaurant Inc. (the "Defaulting Defendant"), and to issue a report and recommendation concerning plaintiff's damages as to the Defaulting Defendant.

Pursuant to the Order of Reference, I issued a Scheduling Order on October 15, 2009 directing plaintiff to serve and file proposed findings of fact and conclusions of law, along with evidentiary materials supporting its claim for damages, by December 18, 2009. My October 15, 2009 Scheduling Order further directed the Defaulting Defendant to submit its responsive materials by January 29, 2010. Specifically, my Order provided:

> Defendants shall submit their response to Plaintiff's submissions, if any, no later than January 29, 2010. IF DEFENDANTS (1) FAIL TO RESPOND TO PLAINTIFF'S SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY JANUARY 29, 2010 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF PLAINTIFF'S WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.")

(Docket Item 16) (emphasis in original).

On or about December 16, 2009, plaintiff, through its counsel, filed a document entitled Findings of Fact and Conclusions of Law Concerning Damages (Docket Item 17). That same day, plaintiff submitted an amended version of this document

(Plaintiff's Findings of Fact and Conclusions of Law Concerning Damages, dated December 16, 2009 (Docket Item 18), ("Pl.'s Findings")).

A copy of my October 15, 2009 Scheduling Order was sent to the Defaulting Defendant at the address at which it was served, namely 534 North Avenue, New Rochelle, New York 10801. It has not been returned by the United States Postal Service as undeliverable and the Defaulting Defendant has not made any written submission to me, nor has it contacted my chambers in any way.

Accordingly, on the basis of the complaint and the affidavits previously submitted by plaintiff and its counsel, I respectfully recommend that the Court make the following findings of fact and conclusions of law and award plaintiff $6,525.00 in statutory damages and costs.

II.  Findings of Fact

A.  The Parties

1.  The plaintiff, J & J Sports Productions, Inc., is a California corporation with its principal place of business at

3

Suite 200, 2380 South Bascom Avenue, Campbell, California 95008

(Complaint[1], dated May 30, 2006 (Docket Item 1), ("Compl.") ¶ 5).

2.   The Defaulting Defendant is a business entity, the

exact nature of which is unknown, having its principal place of

business at 534 North Avenue, New Rochelle, New York 10801

(Compl. ¶ 10).

B.   Plaintiff's Business
and Defaulting Defendant's
Illegal Interception of
Cable Television Programming

3.   Plaintiff contracted to obtain the right to

distribute a boxing match between Julio Cesar Chavez and Ivan

Robinson (the "Chavez/Robinson" fight), including all undercard

bouts and the entire television broadcast (collectively, the

"Event"), scheduled for May 28, 2005 via closed circuit

television and via encrypted satellite signal.  The Event

---

[1]As a result of the Defaulting Defendant's default, all the
allegations of the complaint, except as to the amount of damages,
must be taken as true.  Bambu Sales, Inc. v. Ozak Trading Inc.,
58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v.
E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Trans
World Airlines, Inc. v. Hughes, 449 F.2d 51, 70 (2d Cir. 1971),
rev'd on other grounds, 409 U.S. 363 (1973); Robinson v.
Sanctuary Record Groups, Ltd., 542 F. Supp. 2d 284, 289 (S.D.N.Y.
2008) (Marrero, D.J.), rev'd on other grounds, 383 Fed. App'x 54
(2d Cir. 2010); Wing v. East River Chinese Rest., 884 F. Supp.
663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959
(S.D.N.Y. 1986) (Conner, D.J.).

originated by way of satellite uplink and was subsequently re-transmitted to cable systems and satellite companies by way of satellite signal (Compl. ¶ 15).

4.   Plaintiff entered into contracts with various entities in the State of New York which allowed these entities to publicly exhibit the Event to their patrons (Compl. ¶ 16).

5.   Plaintiff incurred substantial costs to transmit the Event to various entities in the State of New York (Compl. ¶ 17).

6.   With full knowledge that the Event was not to be received and exhibited by entities unauthorized by plaintiff to do so, the Defaulting Defendant, its agents, servants, workmen and employees unlawfully intercepted, received and descrambled the satellite signal by which the Event was transmitted and did willfully exhibit the Event at El Tejanito Restaurant, 534 North Avenue, New Rochelle, New York 10801 (the "Establishment"), for the purposes of direct and indirect commercial advantage and private financial gain (Compl. ¶ 18; Affidavit of Joseph Gagliardi, sworn to March 29, 2007 and annexed to Plaintiff's Affidavit for Default ("Gagliardi Aff.") ¶ 7).

7.   Defaulting Defendant was not authorized by plaintiff to display the Event (Gagliardi Aff. ¶ 8).

8.   Defaulting Defendant, its agents, servants, workmen and employees used an illegal satellite receiver to intercept plaintiff's satellite signal, or used an illegal cable converter box or device to intercept plaintiff's broadcast which was originated by way of satellite uplink and was then re-transmitted by way of satellite or microwave signal to various cable and satellite systems (Compl. ¶ 19; see Gagliardi Aff. ¶ 9).

9.   Plaintiff hired private investigators to visit and identify establishments that displayed the program on the night of the Event without plaintiff's authorization (Gagliardi Aff. ¶¶ 4-5).  One private investigator visited El Tejanito Restaurant on May 29, 2005 at approximately 12:34 a.m. for two minutes and observed two television sets displaying the ninth round of the Event to about twenty-five patrons.  He did not pay a cover charge.  The investigator described the Establishment as "a bar, pizzeria and restaurant" with an estimated capacity between fifty and seventy-five people (Gagliardi Aff. ¶ 7; Affidavit of Jason Deleon, sworn to June 20, 2005 and annexed as Ex. C to the Gagliardi Aff.).

C.  Plaintiff's
    <u>Fees and Costs</u>

10.   In addition to damages, plaintiff seeks to recover
the attorneys' fees and costs it has incurred in this action
(Compl. at 9; Pl.'s Findings ¶¶ 18-19).

11.   Plaintiff seeks to recover a total of $450 in
costs comprised of the filing fee, the process server's fee, and
"investigative expenses" (Pl.'s Findings ¶ 19).  In plaintiff's
Statement for Judgment, submitted with its Memorandum of Law,
plaintiff claimed a $175 filing fee and a $100 service of process
fee for each defendant, totaling $275 (Docket Item 12-3).  I will
assume without deciding that the $175 difference between this
amount and the $450 that plaintiff seeks can be attributed to
plaintiff's investigation costs, which plaintiff has not
accounted for individually.

12.   Plaintiff also seeks to recover "litigation fees
and interest" on the judgment, "including attorney fees" (Pl.'s
Findings ¶ 18).  Plaintiff has not provided any explanation of
the "litigation fees and interest[,]" nor has it provided any
back-up documentation for its attorneys' fees.

III.   Conclusions of Law

13.   This action arises under 47 U.S.C. §§ 553 and 605. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue is properly established in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

14.   The facts set forth in the affidavits submitted by plaintiff, along with the uncontroverted allegations of the complaint, taken together with all the reasonable inferences that can be drawn therefrom, Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981), demonstrate that the Defaulting Defendant has engaged in the unauthorized reception of plaintiff's cable television programming in violation of Section 605(a) of the Communications Act.  47 U.S.C. § 605(a).[2]

15.   Section 605(a) of the Communications Act prohibits the unauthorized reception of any cable television programming services which originate as satellite-delivered "radio communication." Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 434-35 (2d Cir. 2002); Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996).  See also Time Warner Cable of N.Y.

---

[2]Plaintiff alleged violations of 47 U.S.C. §§ 553(a)(1) and 605(e)(4) in Counts II and III of its complaint, but does not address these claims in its proposed findings of fact and conclusions of law.  Since these claims are not addressed anywhere besides the complaint, I deem them abandoned.

<u>City v. Taco Rapido Rest.</u>, 988 F. Supp. 107, 110-11 (E.D.N.Y. 1997); <u>Cablevision Sys. Corp. v. Muneyyirci</u>, 876 F. Supp. 415, 424-25 (E.D.N.Y. 1994).  Since at least part of the Event's transmission was accomplished by satellite, the Defaulting Defendant's interception of the Event violates 47 U.S.C. § 605(a).  <u>Cmty. Television Sys., Inc. v. Caruso</u>, <u>supra</u>, 284 F.3d at 434-35; <u>Int'l Cablevision, Inc. v. Sykes</u>, <u>supra</u>, 75 F.3d at 131, n.4.

16.  As a party possessing "proprietary rights" in the communications which the Defaulting Defendant intercepted, plaintiff is a "person aggrieved" and thereby authorized to bring this civil action against the Defaulting Defendant pursuant to 47 U.S.C. § 605(e)(3)(a) and § 605(d)(6).  In accordance with its statutory rights under 47 U.S.C. § 605(e)(3)(C)(i)(II), plaintiff has elected to recover damages against the Defaulting Defendant for its violation of 47 U.S.C. § 605(a) in the form of statutory damages, as opposed to actual damages.  The Defaulting Defendant's default has prevented plaintiff from discovering the financial benefits actually derived from the its unauthorized reception of the Event.

17.  The range of statutory damages for a violation of section 605(a) is $1,000 through $10,000, except in cases where the violation occurred for direct or indirect commercial

advantage or private financial gain.  47 U.S.C.

§ 605(e)(3)(C)(i)(II).  Where the violation did occur for

purposes of commercial advantage or private financial gain, "the

court in its discretion may increase the award of damages,

whether actual or statutory, by an amount of not more than

$100,000 for each violation . . . ."  47 U.S.C.

§ 605(e)(3)(C)(ii).

        18.  Plaintiff seeks $110,000 in statutory damages for

the Defaulting Defendant's interception of the Event on the

theory that it intercepted the Event illegally for commercial

advantage and financial gain (Compl. ¶ 23; Pl.'s Findings ¶ 17).

Although I agree with plaintiff that the Defaulting Defendant did

intercept the Event for the illicit purposes cited by plaintiff,

I also believe that an award of the theoretical[3] maximum

statutory damages is unwarranted here.  In determining whether to

award enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), courts

consider such factors as whether there is evidence of "repeated

─────────────────

        [3]Plaintiff arrives at the $110,000 figure by adding the
maximum amount of statutory damages recoverable under Section
605(e)(3)(C)(i)(II) to the maximum amount recoverable under
Section 605(e)(3)(C)(ii).  It is not clear whether this
aggregation of statutory damages is permissible.  Plaintiff cites
no authority addressing the issue and my own research has not
disclosed any cases addressing the question.  Since I recommend
that the amount to be awarded against the Defaulting Defendant is
substantially less than $110,000, I need not resolve this issue.

violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec y Caridad, Inc., 01 Civ. 6562 (SHS), 2001 WL 1586667 at *2 (S.D.N.Y. Dec. 12, 2001) (Stein, D.J.); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993). Although the Defaulting Defendant's interception of the Event was illegal, it appears from the information submitted by plaintiff that its use of the Event was limited. There is no evidence that the Defaulting Defendant is a repeat offender, nor is there any evidence that it advertised for the intended broadcast of the Event, charged premiums for food and drinks during the display of the Event, imposed a cover charge or received substantial unlawful monetary gain. Based on these factors, the most compelling inference here would be that the Defaulting Defendant illegally intercepted and displayed the Event solely in order to induce customers to patronize the Establishment and thereby increase the sale of food and drink. In light of the limited evidence presented concerning the Defaulting Defendant's use of the Event, I conclude that the theoretical statutory maximum is not appropriate in this matter.

11

19.  As the Honorable Ronald E. Ellis, United States Magistrate Judge, has noted in Kingvision Pay-Per-View, Ltd. v. Recio, 02 Civ. 6583 (JSM)(RLE), 2003 WL 21383826 at *4 (S.D.N.Y. June 11, 2003):

> Courts have developed two approaches for determining statutory damages under § 605.  One approach is to calculate the award of damages by the number of patrons in the establishment at the time of the violation.  See Taco Rapido Restaurant, 988 F. Supp. at 111 (court awarded $50 per patron); Googies Luncheonette, 77 F. Supp. 2d at 490 (court awarded $50 per patron). Another approach is to award a flat sum for damages. See Kingvision Pay-Per-View, Ltd., v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (court awarded $5,000); 2182 La Caridad Rest., Inc., 2002 WL 654137 at *3 (court awarded $3,400).

See also Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec y Caridad, Inc., supra, 2001 WL 1586667 at *2 ("Courts have used three different methods to calculate damages . . . (1) apply a multiplier to the minimum statutory rate; (2) apply a multiplier to the cost of obtaining a license to broadcast the event legally; or (3) assess a per customer charge.").  I conclude that statutory damages should be assessed based on the number of patrons in the Establishment while the Event was displayed.  I shall assume that each patron purchased an average of $250 worth of food and drink as a result of his or her being in the Establishment while the Event was being intercepted.  Although this premise assumes a relatively high level of consumption, it

12

will ensure that all of the Defaulting Defendant's profits are disgorged and, thereby, discourage the Defaulting Defendant and others from engaging in similar acts of cable piracy in the future.  See generally New Contenders, Inc. v. Diaz Seafood Corp., 96 Civ. 4701 (AGS)(HBP), 1997 WL 538827 at *2 (S.D.N.Y. Sept. 2, 1997) (Schwartz, D.J.) (approving award of statutory damages assessed at a rate of $300 per patron).  Although this assumption is, to some extent, speculative, some speculation with respect to damages is permissible where, as here, a defendant's default has prevented damages from being computed with greater certainty.  Katz Communications, Inc. v. Evening News Assoc., 705 F.2d 20, 25 (2d Cir. 1983) (where the wrongdoer's conduct makes it impossible to ascertain damages with certainty, the court may resort to "reasonable conjectures and probable estimates and to make the best approximation possible") (citations and internal quotation marks omitted).

20.  Applying this methodology with respect the Event displayed at the Establishment yields the following results: 25 patrons x $250/patron = $6,250.00

21.  Section 605(e)(3)(B)(iii) of Title 47 requires a court to award to "an aggrieved party who prevails" the "full costs" and reasonable attorneys' fees which it incurred in prosecuting its claims to judgment.  In the Second Circuit,

13

however, a party seeking to recover attorneys' fees must submit
contemporaneous time records that show "for each attorney, the
date, the hours expended, and the nature of the work done." N.Y.
State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136,
1154 (2d Cir. 1983).   Transcriptions of contemporaneous time
records containing the above information have been found to
satisfy this requirement.   See e.g. Cruz v. Local Union No. 3 of
Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160-61 (2d Cir. 1994)
(accepting a "typed listing of [attorneys'] hours from their
computer records," in lieu of contemporaneous records, where the
record showed that the attorneys "made contemporaneous entries as
the work was completed, and that their billing was based on these
contemporaneous records"); Johnson v. Kay, 742 F. Supp. 822, 837
(S.D.N.Y. 1990) (Sweet, D.J.) ("Where the attorneys have provided
the court with affidavits that have been reconstructed from
contemporaneous records and that set forth all charges with
specificity, fees have not been denied."); Lenihan v. City of
N.Y., 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (Conner, D.J.) ("The
Court routinely receives computerized transcriptions of
contemporaneous time records from firms whose billing records are
maintained in computers" as "a form convenient for the Court.").
"Attorneys' fees applications that do not contain such supporting
data[, however,] 'should normally be disallowed.'"   Cablevision

14

Sys. N.Y. City Corp. v. Diaz, 01 Civ. 4340 (GEL)(FM), 2002 WL 31045855 at *5 (S.D.N.Y. July 10, 2002) (Maas, M.J.), quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1154, and citing Kingvision Pay-Per-View v. The Body Shop, 00 Civ. 1089 (LTS), 2002 WL 393091 at *5 (S.D.N.Y. Mar. 13, 2002) (Swain, D.J.).

22. Here, plaintiff has not submitted contemporaneous time records. In fact, plaintiff has not submitted a proposed amount of attorney's fees to be paid, nor any accounting whatsoever of legal work completed in this case. Accordingly, I respectfully recommend that plaintiff not be awarded attorneys' fees in this action.

23. Plaintiff is, however, entitled to recover as costs its filing fee ($175) and the fees it incurred to serve the Defaulting Defendant ($100), totaling $275. However, an award of investigative fees is not appropriate here. First, it is not clear that investigative costs may be awarded in this context; neither 28 U.S.C. § 1920 nor 47 U.S.C. § 605(e)(3)(B)(iii) expressly provides for the award of investigative fees, and courts in this jurisdiction have declined to award investigative fees in similar circumstances. See e.g. Garden City Boxing Club, Inc. v. Mendez, 05 Civ. 10001 (RMB)(AJP), 2006 WL 1716909 at *2 (S.D.N.Y. June 16, 2006) (Berman, D.J.) (declining to follow

magistrate judge's recommendation regarding award of investigator's fees); Kingvision Pay-Per-View Ltd. v. Cardona, 03 Civ. 3839 (GDB)(FM), 2004 WL 1490224 at *4 (S.D.N.Y. June 30, 2004) (Maas, M.J.) (Report & Recommendation) (denying request for recovery of investigator's fees and stating that "[t]here is no provision for a prevailing party to be awarded the cost of its investigator"); Joe Hand Promotions, Inc. v. Soto, 01 Civ. 0329 (GBD)(AJP), 2003 WL 22962810 at *2 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) ("there is no authority to award 'investigative fees' as costs").  Second, assuming without deciding that investigative costs may be awarded under 47 U.S.C. § 605(e)(3)(B)(iii)'s provision for "full costs," see Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 66-69 (E.D.N.Y. 2006), plaintiff has not delineated the portion of the $450 it seeks which was used to pay for investigative services, and certainly has not established the time expended by the investigator nor the reasonableness of the investigator's fees. See Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997) ("a request for investigative fees pursuant to § 605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected" thus requiring a plaintiff to document "(1) the amount of time necessary for the investigation; (2) how much the investigators

16

charged per hour; [and] (3) why the investigators are qualified to demand the requested rate."). Plaintiff provides none of the required information; accordingly, I respectfully recommended that plaintiff's request for investigative fees be denied in its entirety.

24. Finally, plaintiff's complaint also sought an injunction (Compl. ¶¶ 37-38). Since the propriety of injunctive relief is beyond the scope of the reference, I make no recommendation concerning the propriety of injunctive relief, although I note that such relief is ordinarily appropriate in a case such as this.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that damages be assessed against the Defaulting Defendant in the amount of $6,525.00.

V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. <u>See also</u> Fed.R.Civ.P. 6. Such objections (and responses thereto) shall be filed with the Clerk of the

Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States District Judge, 500 Pearl Street, Room 630, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.   Any requests for an extension of time for filing objections must be directed to Judge Daniels.   FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.   Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        March 1, 2011

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Julie Cohen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill
P.O. Box 351
Ellenville, New York 12428


18

El Tejanito Restaurant Inc.
534 North Avenue
New Rochelle, New York 10801